**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Bond,<br><br>            Plaintiff,<br><br>v.<br><br>Wells Fargo Bank NA,<br><br>            Defendant. | No. CV-21-00830-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint (Doc. 14, MTD) to which Plaintiff Jennifer Bond filed a Response (Doc. 16, Resp.) and Defendant filed a Reply (Doc. 17, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part Defendant's Motion to Dismiss. Also, the Court grants Plaintiff leave to amend the Complaint.

**I.    BACKGROUND**

Plaintiff filed a Complaint alleging sex discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a)(2) and age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d). (Doc. 1, Compl. ¶¶ 1-4.) The Complaint alleges Plaintiff has been employed by Defendant since September 2017, first as a contractor and then, "due to good performance," as a full-time Operational Risk Consultant 5. (Compl. ¶ 14.)

Plaintiff's claims arise out of several alleged acts of discrimination occurring over the course of her employment at Wells Fargo. (Compl. ¶¶ 14-44.) Plaintiff contends that, "[b]eginning in April 2018," her immediate manager made "condescending, disparaging comments because of her sex," "[r]egularly criticized her communications with others," and "[r]egularly publicly humiliated her." (Compl. ¶ 19.) Plaintiff alleges that this occurred on "[a]t least 20" occasions, and that similarly situated male coworkers were not subjected to the same treatment. (Compl. ¶ 19.) Plaintiff further alleges that her male coworkers were "assigned ample work" to Plaintiff's exclusion. (Compl. ¶ 21.) According to Plaintiff, her manager made "ageist comments," toward Plaintiff "[a]t least eight times," including repeated statements that Plaintiff was being held "to a higher standard than the younger members of the team." (Compl. ¶ 22.) Sometime during 2018, Plaintiff received a negative "Improvement Needed" evaluation that Plaintiff alleges "contained false facts." (Compl. ¶ 22.) Plaintiff complained about her manager's alleged treatment of her in a companywide survey in the summer of 2018. (Compl. ¶¶ 23-25.)

Plaintiff alleges retaliation against her for complaining about the sex and age discrimination she experienced. (Compl. ¶ 7.) As a result, in February 2019, Plaintiff contends she received another "baseless" "Needs Improvement" evaluation. (Compl. ¶ 31.) Additionally, on March 9, 2019, Plaintiff states she received a bonus that was "$33,000 lower because of age, sex, and retaliation." (Compl. ¶ 32.) This time, Plaintiff alleges she went directly to her manager's supervisor to discuss her manager's treatment of her. (Compl. ¶¶ 23-25.) In May 2019, Plaintiff allegedly further escalated her complaints about her manager's treatment of her by speaking to a Human Resources ("HR") specialist. (Compl. ¶¶ 23-25.)

In July 2019, shortly after complaining to her supervisor's manager and HR, Plaintiff claims she was demoted in a "reorganization." (Compl. ¶ 33.) A week later, Plaintiff was transferred to another position that she alleges "became an unhealthy environment." (Compl. ¶ 34.) Plaintiff alleges that Defendant

>removed all of [Plaintiff]'s tasks from her calendar and did not add any new ones, did not permit her to attend required team events and meetings, removed her from projects, did not provide her presentations and training that were provided to her team members, and assigned her work to coworkers.

(Compl. ¶ 34.) Plaintiff's then-manager expected Plaintiff to "obtain impossible-to-meet 100% perfect scores on performance objections but did not require anyone else to do so." (Compl. ¶ 34.) Plaintiff further alleges that, due to the removal of work from her calendar and assignment of her work to others, Plaintiff's relationships with team members were "irreparably damaged," hindering her career advancement. (Compl. ¶ 34.)

Additionally, Plaintiff contends her then-manager began "disciplining [Plaintiff] without justification and acting unprofessionally toward her." (Compl. ¶ 37.) This allegedly included being falsely written-up for violating a Wells Fargo policy, stating Plaintiff's "tone of voice was too friendly in an email," excluding Plaintiff from meetings, and "chastis[ing]" Plaintiff for attending meetings she was required to attend. (Compl. ¶ 37.) Plaintiff further alleges that, when Defendant transferred Plaintiff to a new position, she was expected to both perform her new job duties and continue performing the job duties from her prior position. (Compl. ¶ 38.)

Plaintiff also alleges that Defendant "denied over 25 of [Plaintiff]'s applications for transfers into new positions," and by November 2019, HR informed Plaintiff it was unable to substantiate any of her complaints. (Compl. ¶¶ 27, 40.) In December 2019, Plaintiff claims she "self-demoted" to a new position "with a substantial cut in pay and bonus and a less prestigious job title with lower earning and promotion potential, to escape [her manager]'s unprofessional behavior." (Compl. ¶ 41.) Around this time, Plaintiff also contacted the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination. (Compl. ¶ 11.) The EEOC filed Plaintiff's charge on January 17, 2020. (Compl. ¶ 11.) On February 16, 2021, the EEOC issued a right to sue letter, and on May 10, 2021, Plaintiff filed her Complaint. (Compl. ¶ 12.) Defendant now moves to dismiss some of Plaintiff's claims for untimeliness and failure to exhaust administrative remedies.

## II. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Title VII and ADEA Administrative Remedies

In the Complaint, Plaintiff alleges four counts of discriminatory conduct: discrimination based on sex in violation of Title VII; discrimination based on age in violation of the ADEA; retaliation for complaints of sex discrimination in violation of Title VII; and retaliation for complaints of age discrimination in violation of the ADEA. (Compl. ¶¶ 1-4.) Title VII, 42 U.S.C. § 2000e-2(a) states that it is unlawful for an employer to "fail

or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Under the ADEA, 29 U.S.C. § 623(a), it is unlawful for employers to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

Before a plaintiff may file a Title VII or ADEA suit in federal court, she must first file a charge with the EEOC. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5. Additionally, Plaintiff's charge must be filed with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5. Employees are required to exhaust their administrative remedies before filing a Title VII suit. *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984).[1]

### 1. Timeliness of Plaintiff's Allegations

Plaintiff's allegations comprise both discrete acts of discrimination as well as claims based on a hostile work environment. The court will turn to each below.

#### a. Claims Alleging Discrete Discriminatory Acts

A discrete discriminatory act "'occur[s]' on the day that it 'happen[s]'." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). To recover for a discrete discriminatory act, a plaintiff must file a charge with the EEOC within 300 days of the date on which it occurred.[2] *Id.* Related or connected discrete acts are not converted into a "single unlawful practice for the purposes of timely filing." *Id.* at 111. The fact that some discrete acts fall within the statutory period does make other discrete acts occurring outside the statutory time period timely. *Id.* at 112. If a discrete act is time-barred, it is not actionable

---

[1] Exhaustion of administrative remedies is a condition precedent to filing suit but is not a jurisdictional issue. *Stache v. Int'l Union of Bricklayers & Allied Craftsmen, AFL-CIO*, 852 F.2d 1231, 1233 (9th Cir. 1988).

[2] Even if a discrete act is time-barred, the statute does not prevent an employee from using evidence of discrete acts as background evidence to support a timely claim. *Morgan*, 536 U.S. at 113.

even if it is "related to acts alleged in timely filed charges." *Id.* at 113. Each discrete act is subject to its own 300-day statute of limitations. *Id.*

In this case, Plaintiff filed her administrative charge with the EEOC on January 17, 2020. Accordingly, any claim taking place prior to March 23, 2019 is time-barred under Title VII and the ADEA.[3] The Complaint includes several alleged discrete acts of discrimination or retaliation that occurred prior to the 300-day period for timely claims filed with the EEOC; each is time-bared. Defendant points out that several of Plaintiff's allegations either do not include specific dates on which certain alleged discriminatory acts took place or have been re-framed in Plaintiff's Response as occurring within the 300-day statutory period. For example, Plaintiff alleges that Defendant "denied over 25 of [Plaintiff]'s applications for transfers into new positions." (Compl. ¶ 40.) Denial of transfer is a discrete discriminatory act. *Morgan*, 536 U.S. at 114. In order to state a claim with respect to the denials of transfer, Plaintiff must allege that they took place within the 300-day period (on or after March 23, 2019). Plaintiff states that reading the Complaint chronologically would suggest that the transfer denials took place on or after March 23, 2019. (Resp. at 7.) The Court will grant Plaintiff leave to amend the Complaint to clarify and properly state the dates of the alleged discriminatory acts, if she has evidence to support such contentions in good faith.

### b. Claims Alleging a Hostile Work Environment

Hostile work environment claims, unlike discrete discriminatory acts, are "based on the cumulative effect of individual acts" that, while not necessarily actionable on their own, collectively form a single "unlawful employment practice.". *Morgan*, 536 U.S. at 114. To determine whether an employee has alleged an actionable hostile work environment claim, the court looks at "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

[3] The Court addresses Plaintiff's argument that the 300-day period should begin on December 19, 2018 instead of March 23, 2019 in section III.A.2.

performance.'" *Id.* at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Unlike claims arising out of discrete discriminatory acts, claims based on a hostile work environment may include some acts that fall outside of the 300-day statutory period. *Id.* at 117. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Therefore, for a hostile work environment claim to be timely, an employee must file a charge within 300 days of *any act* that is part of the alleged hostile work environment. *Id.* at 118 (emphasis added).

Defendant alleges that Plaintiff's undated allegations regarding "condescending, disparaging comments because of [Plaintiff's] sex," "ageist comments toward [Plaintiff]," and alleged criticism and public humiliation of Plaintiff should be dismissed as it is "impossible to discern whether any of the alleged acts fall within the 300-day statute of limitations." (MTD at 8.) Because these alleged acts would cumulatively support a finding that Plaintiff experienced a hostile work environment based on her sex and age, Plaintiff must demonstrate that she experienced at least one instance of discrimination within the 300-day period to establish the timeliness of her hostile work environment claims. *See Morgan*, 536 U.S. at 118.

While most of Plaintiff's allegations supporting her hostile work environment claim are undated in the Complaint, she alleges that between August and October 2019, she had work tasks removed from her – without new work assigned in its place – in retaliation for her complaints of sex and age-based discrimination. (Doc. 1, Compl. ¶ 34.) Insofar as the harm underpinning Plaintiff's hostile work environment claim is unreasonable interference with an employee's work performance or advancement, the repeated or continuing removal of work from Plaintiff or refusal to assign work to her may be considered acts constituting a hostile work environment, rather than discrete acts of discrimination. *See Morgan*, 536 U.S. at 116. Plaintiff alleges further discriminatory treatment during this period, such as requiring that she "obtain impossible-to-meet 100% perfect scores on performance objections" when her peers were not required to do so. (Compl. ¶ 34.) These allegations

fall within the 300-day period, thereby making Plaintiff's earlier, otherwise-untimely allegations of a hostile work environment timely.

### 2. Agency Error and Equitable Tolling Claims

Plaintiff suggests that equitable tolling should apply in this case, making the starting-point for the 300-day period December 19, 2018, rather than March 23, 2019. Plaintiff states:

> On October 15, 2019, [Plaintiff] made contact with the EEOC to file a charge of discrimination. 300 days prior to October 15, 2019 is December 19, 2018. It took the EEOC nearly two months until December 12, 2019 to draft the charge and then it did not file the charge for another month, until January 17, 2020.

(Resp. at 2-3.) Plaintiff argues that because she contacted the EEOC regarding filing a charge alleging discrimination on October 15, 2019, the 300-day period should be tolled to December 19, 2018. (Resp. at 2.) Plaintiff's argument fails for two reasons.

First, the timely filing requirement under Title VII is subject to waiver and equitable tolling "when equity so requires." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982).[4] Equitable tolling may apply to the Title VII statutory period where "a Plaintiff filed a charge with a state administrative agency whose errors or delays caused the charge to be untimely filed with the EEOC." *Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.*, 2009 WL 891057 *15 (E.D. Cal. Mar. 31, 2009). Federal courts apply equitable tolling sparingly. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Equitable tolling may be allowed

> in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

---

[4] Tolling comports with "the remedial purpose of [Title VII] as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Zipes*, 455 U.S. at 398.

*Id*.[5] The Supreme Court has "been much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

Plaintiff has failed to plead any reason why equity would require tolling the statutory period back to December 19, 2018 or any facts that would support finding that equitable tolling would apply in her case. Given that courts apply tolling "sparingly," Plaintiff must make some showing as to either an actual agency error by the EEOC or that she was misled by "[her] adversary's misconduct" to justify tolling the starting date for the 300-day statutory period. *See Irwin*, 498 U.S. at 96. Plaintiff has not alleged facts supporting either, so she is not entitled to equitable tolling.

Second, Plaintiff's argument that the date on which she contacted the EEOC, rather than the filing date, should serve as the starting point for tolling the 300-day period is without support in Ninth Circuit case law. Title VII, 42 U.S.C. § 2000e-5(e)(1), states that a charge alleging unlawful employment practice "shall be *filed* by [] the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." Both the statutory language and the relevant Ninth Circuit case law require utilizing the date of filing to determine the beginning of a plaintiff's 300-day statutory period.

### 3. Allegations Excluded from the EEOC Charge

The Court has subject matter jurisdiction over allegations of discrimination which are "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)) (internal quotations omitted). However, courts may still evaluate claims relating to incidents which are not listed in a plaintiff's EEOC charge.

> When an employee seeks judicial relief for incidents not listed in his original EEOC charge, a federal court may assume

---

[5] In *Boyd v. U.S. Postal Service*, the Ninth Circuit found that a complainant had not alleged any facts that would support applying the principles of estoppel or equitable tolling. *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985). Complainant had failed to demonstrate that he had been affirmatively misled by his employer or had been unaware of appropriate administrative procedures. *Id.*

> jurisdiction over the new claims if they are "like or reasonably related to the allegations of the EEOC charge."

*Brown*, 732 F.2d at 729. Title VII's remedial purpose indicates that charges filed with the EEOC should be construed liberally. *Stache*, 852 F.2d at 1231.

Defendant argues that Plaintiff's claims with respect to the twenty-five alleged transfer denials were not included in Plaintiff's EEOC charge and should therefore be dismissed for failure to exhaust administrative remedies. (MTD at 4-5.) In her EEOC charge, Plaintiff references "attempts on [her] part to move to another group," and states later that she eventually "gave up applying for other roles." (MTD at 15.) Given the Ninth Circuit's approach that "charges filed with the EEOC should be construed liberally," these statements are sufficient to support a finding that Plaintiff has exhausted her administrative remedies with respect to these allegations. *See Stache*, 852 F.2d at 1231. Even assuming that these claims are insufficiently specific as to the 25 transfer denials alleged in the Complaint, the Court may still evaluate those claims because they are "like or reasonably related to the allegations of the EEOC charge." *See Brown*, 732 F.2d at 729.

### B. Plaintiff is Granted Leave to Amend the Complaint

If a defective complaint can be cured, a plaintiff is entitled to amend the complaint before a portion of it is dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1127-30 (9th Cir. 2000). Because it is possible Plaintiff could allege facts showing that discrete discriminatory acts or acts underpinning her hostile work environment claims accrued within the limitations period – that is on or after March 23, 2019 – the Court will permit Plaintiff to amend the Complaint. Claims based on alleged discrete acts occurring before March 23, 2019, are dismissed as time-barred.

### IV. CONCLUSION

Plaintiff has failed to state a claim with respect to any allegations of discrete discriminatory acts occurring prior to March 23, 2019. To the extent Plaintiff can show that the undated allegations in her Complaint occurred on or after March 23, 2019, Plaintiff is granted leave to amend the Complaint. Additionally, Plaintiff's hostile work environment

claims are timely because some allegations fall within the 300-day period, thereby making Plaintiff's earlier, otherwise-untimely allegations of a hostile work environment timely. Lastly, the Court has subject matter jurisdiction over Plaintiff's allegations not explicitly presented to the EEOC because they are reasonably related to the allegations in the EEOC charge.

**IT IS THEREFORE ORDERED** granting in part Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 14). All claims stemming from discrete discriminatory acts taking place prior to March 23, 2019 are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff may file an Amended Complaint by December 20, 2021, but only consistent with the limitations as specified in this Order.

Dated this 9th day of December, 2021.

Honorable John J. Tuchi
United States District Judge