**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Bond,<br><br>                    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank NA,<br><br>                    Defendant. | No. CV-21-00830-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 51, Mot.), to which Defendant filed a Response (Doc. 59, Resp.) and Plaintiff filed a Reply (Doc. 62, Reply). Also at issue are Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 63) and Defendant's Motion to Stay Deadline to Respond to Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 65), to which Plaintiff filed a Response (Doc. 68) and Defendant filed a Reply (Doc. 69). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

The Court recited the background facts of this case in its December 9, 2021 Order (Doc. 20). In brief, Plaintiff Jennifer Bond alleges sex and age discrimination and retaliation against Defendant Wells Fargo Bank NA, her current employer, under Title VII and the Age Discrimination in Employment Act ("ADEA"). In ruling on Defendant's first motion to dismiss, filed July 2, 2021, the Court granted Plaintiff leave to amend the Complaint to the extent Plaintiff could allege that undated discrete discriminatory acts in

her Complaint occurred on or after March 23, 2019; discrete acts occurring before that date were time-barred. Plaintiff filed her First Amended Complaint on December 20, 2021. (Doc. 24.) The Court entered a Scheduling Order on December 16, 2021. (Doc. 22.)

On January 20, 2022, Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (Doc. 31.) In an Order dated May 5, 2022 (Doc. 41), the Court granted in part and denied in part Plaintiff's request to amend, requiring her to remove allegations from the proposed SAC concerning discriminatory and retaliatory evaluations and performance improvement plans and a lost bonus/raise, because those allegations were not presented in her Charge to the Equal Employment Opportunity Commission ("EEOC") and therefore not administratively exhausted. Plaintiff filed the SAC on May 20, 2022 (Doc. 42), and it is presently the operative pleading in this case.

After Defendant filed a motion to dismiss the SAC on June 24, 2022 (Doc. 49), the parties informed the Court (Doc. 50) that Plaintiff had received a new right to sue letter from the EEOC based on new allegations against Defendant. The parties thus jointly asked the Court to strike the pending motion to dismiss the SAC and vacate the Scheduling Order pending a new operative complaint and answer, which the Court did (Doc. 52). Plaintiff filed a Motion for Leave to File a Third Amended Complaint ("TAC") on July 12, 2022 (Doc. 51), now pending before the Court.

On October 28, 2022, Plaintiff filed a Motion for Leave to File a Fourth Amended Complaint in which she informed the Court that she received yet another right to sue letter from the EEOC. (Doc. 63.) Instead of responding to that Motion, Defendant filed a Motion (Doc. 65) to stay its response pending the Court's ruling on Plaintiff's earlier-filed Motion for Leave to File a TAC.

**II.    LEGAL STANDARD**

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, *inter alia*, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision

to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted). The policy of Rule 15 "should be applied with extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading, the court considers whether the complaint was previously amended, *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004), or if an amendment "would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (citation and internal quotation marks omitted). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

"A proposed amended complaint is futile if it would be immediately subject to dismissal. Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (quotations and citations omitted), *aff'd on reh'g en banc on other grounds,* 681 F.3d 1041 (9th Cir. 2012). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. ANALYSIS

### A. Motion for Leave to File a TAC

Defendant argues that certain allegations in the Proposed TAC (Doc. 51-3, Proposed TAC) are futile, and the Court will examine them in turn. (*See* Resp. at 4-12.)

#### 1. Paragraph 42(D)—Plaintiff's Withdrawn Applications

In the Proposed TAC, Plaintiff clarifies prior versions of the complaint by alleging that of the 25 transfer requests Defendant allegedly "denied," Plaintiff voluntarily withdrew 12 of them because they were below her pay grade.[1] (Proposed TAC ¶ 42(D).) As Defendant now argues, Plaintiff's act of withdrawing applications for transfers below her pay grade cannot be construed as a "denial" of a transfer by Defendant or, for that matter, a discriminatory act on the part Defendant. Plaintiff alleges no facts from which the Court could plausibly infer that Defendant's alleged reticence to consider a candidate for a position below the candidate's pay grade was pretext in Plaintiff's case. Before filing the TAC, Plaintiff shall remove Paragraph 42(D) and amend the remaining text of Paragraph 42 (and the TAC as a whole) to remove reference to the 12 withdrawn applications.

#### 2. Paragraph 43—Plaintiff's Self-Demotion

In Paragraph 43 of the Proposed TAC, Plaintiff alleges:

> Due to the harassment, discrimination, and retaliation, in December 2019, Jennifer self-demoted as an Operational Risk Consultant (Level 4) (ORC 4) from ORC 5, her current position, with a substantial cut in pay, cut in annual raise, loss of bonus, and a less prestigious job title with lower earning and promotion potential, to escape Sandi's unprofessional behavior.

Defendant contends that Plaintiff's allegation of self-demotion is not actionable against Defendant, at least without further factual allegations not contained in the Proposed TAC. In her Reply, Plaintiff acknowledges the Ninth Circuit has not recognized a cause of action of discrimination arising from constructive demotion—voluntary demotion caused by

---

[1] The Court disagrees with Plaintiff that these paragraphs "are not at issue in this Motion." (Reply at 6.) The entire Proposed TAC is at issue, so long as the argument is not one the Court has already resolved in prior Motions.

adverse working conditions—but Plaintiff analogizes constructive demotion with the recognized cause of action arising from constructive discharge.

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000)). The constructive discharge inquiry is objective. *See id*. at 1184–85. It cannot be based upon a plaintiff's preference for one position over another and does not turn on whether the plaintiff subjectively viewed his or her work conditions as "a career ender" or "egregious." *See id*. at 1184–85 (no constructive discharge when plaintiff demoted to non-supervisory position and reassigned to another state away from family). In addition, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1168 (D. Ariz. 2007). The Ninth Circuit has "set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether [his or her] employment situation was intolerable." *Poland*, 494 F.3d at 1184.

A constructive discharge inquiry—or constructive demotion inquiry, accepting that claim as meritorious for the purpose of this analysis—can be a question for a factfinder, but that principle does not relieve a plaintiff from alleging sufficient facts in the complaint to make such a claim plausible. Even if the Court takes all of Plaintiff's allegations as true, they do not rise to the level of demonstrating objectively egregious working conditions sufficient to support a constructive discharge or demotion claim. For that reason, Plaintiff fails to state a claim on the basis of her voluntary demotion. Plaintiff shall therefore remove Paragraph 43 from the Proposed TAC as a basis of a charge of discrimination against Defendant.

### 3. Paragraph 76(B)—Overlooking Plaintiff for Tap-on-the-Shoulder Promotions

Lastly, Defendant argues Plaintiff's proposed allegations in Paragraph 76(B) of the Proposed TAC regarding the fact that male or younger employees were given promotions without applying—"tap-on-the-shoulder promotions"—when Plaintiff was not offered such a promotion are futile because they do not show that Defendant denied Plaintiff a promotion she applied for, and because they were not included in Plaintiff's two Charges to the EEOC. Regarding the first point, the Court agrees with Plaintiff that an employer's practice of promoting other (male and/or younger, less-qualified) employees while overlooking Plaintiff for a promotion, even in the absence of an application process, may constitute a discriminatory act. *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 148 (N.D. Cal. 2004) (explaining "tap on the shoulder" promotion process in which hiring "guidelines set forth only the minimum requirements for advancement" and "decisions as to who will actually be selected [for promotion] are based largely on subjective criteria").

With regard to Plaintiff's exhaustion of administrative remedies, in her March 24, 2022 EEOC Charge, Plaintiff alleged she unfairly received "Needs Improvement" reviews in December 2021 and January 2022 and, "as a result, I was unable to move to the next position, which would provide me a significantly larger earning potential." (Doc. 51-1, EEOC Charge dated Mar. 24, 2022.)[2] If the Court reads the Charge liberally, Plaintiff at least raised the fact that she was not promoted as of March 24, 2022, based on Defendant's alleged act in January 2022. The Court disagrees with Plaintiff that the dates the tap-on-the-shoulder promotions of others occurred do not matter in resolving whether Plaintiff's claim survives Defendant's Rule 12(b)(6) challenge. Indeed, much of the Court's prior two Orders (Docs. 20, 41) concerned this very point. Now, at the Proposed *Third* Amended Complaint, the Court finds itself again repeating what it has stated in prior Orders examining Plaintiff's proposed pleadings.

---

[2] Plaintiff's allegations in Paragraph 76(D) post-date Plaintiff's first Charge to the EEOC. (*See* Doc. 14 at 14-15, EEOC Charge dated Jan. 17, 2020.)

As Plaintiff knows by now—indeed should have known without the Court explaining it twice previously (Docs. 20, 41)—to state an actionable claim in federal court for a violation of Title VII or the ADEA, a charging party must file a charge with the EEOC or applicable state agency within 300 days of the occurrence of each discrete discriminatory act prior to commencing federal action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). "The requirement, therefore, that the charge be filed 'after' the practice 'occurred' tells us that a litigant has up to . . . 300 days *after* the unlawful practice happened to file a charge with the EEOC." *Id.* at 109–10. Thus, Plaintiff's claims of tap-on-the-shoulder promotions of others in her proposed TAC must have occurred within 300 days prior to submitting the March 24, 2022 EEOC charge.

To begin with, Plaintiff's allegations in Paragraphs 76(B)(2), (4), and part of (7) occurred in April 2022, *after* Plaintiff filed her March 24, 2022 EEOC Charge. Obviously, they were not included in the EEOC Charge and must be removed from the Proposed TAC. Plaintiff's allegations in Paragraphs 76(B)(1) and (3) have no date. Plaintiff shall either add the date, if it falls within the acceptable window of time, or delete those allegations. Plaintiff's allegations in Paragraphs 76(B)(5), (6), part of (7), (8), and (9) pertain (at least in part) to January 2022. The Court can plausibly infer they occurred after Plaintiff received her January 2022 "Needs Improvement" review making her ineligible for promotion, as Plaintiff alleges in her EEOC Charge, and those allegations may remain in the TAC.

### B. Motion to Stay

In her Motion for Leave to File a Fourth Amended Complaint (Doc. 63), Plaintiff states she filed another EEOC Charge on August 9, 2022, and received a right to sue letter six days later, on August 15, 2022. The Court will grant Defendant's subsequent request (Doc. 65) to stay briefing on Plaintiff's Motion for Leave to File a Fourth Amended Complaint, because the Court had not yet ruled on Plaintiff's Motion for Leave to File a TAC, so no TAC yet existed on the docket from which Plaintiff could draft a Proposed Fourth Amended Complaint. The Court will enter a new briefing schedule below. The

Court will also strike Plaintiff's pending Motion for Leave to File a Fourth Amended Complaint (Doc. 63) and require Plaintiff to refile it to include a Proposed Fourth Amended Complaint red-line based on the now-changed TAC that Plaintiff shall file.

The Court has inherent authority to manage its docket, and in that respect the Court has reached the end of its rope with regard to this matter. Plaintiff could no doubt continue almost indefinitely the cycle of gathering allegations against Defendant, filing an EEOC charge, receiving a right to sue letter, and filing another motion to amend the complaint. But this matter has been pending for 20 months—since May 2021—and does not yet have an operative Scheduling Order under the Federal Rules of Civil Procedure. Indeed, the parties have not even briefed the latest of Plaintiff's motions to amend. As a matter of judicial efficiency and repose, there must come a date when the continuing allegations related to this lawsuit must end and the litigation must proceed. In that vein, Plaintiff will not be permitted to further amend the complaint in this matter beyond the Fourth Amended Complaint, should the Court grant her leave to file that pleading. Thereafter, Plaintiff may bring any new allegations against Defendant in a separate lawsuit. This case must now proceed to discovery based on the known, meritorious allegations, and the Court is now prepared to enter another Scheduling Order and move this matter forward.

Accordingly, the parties shall also jointly file a proposed "Second Scheduling Order." The parties shall use the Court's prior Scheduling Order, at Doc. 22, for this purpose, proposing new deadlines beginning with "4. Fact discovery shall be completed by _____." The deadlines prior to that have now passed.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 51), as detailed in this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall file the Third Amended Complaint, as modified by the limitations specified in this Order, by **January 20, 2023**.

**IT IS FURTHER ORDERED** granting Defendant's Motion to Stay Deadline to Respond to Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 65).

**IT IS FURTHER ORDERED** striking Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 63) with leave to refile based on the newly-filed Third Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended Motion for Leave to File a Fourth Amended Complaint by **February 3, 2023**. Defendant shall respond by **February 17, 2023**, and Plaintiff shall file any Reply by **February 24, 2023**. No further motions to amend the complaint shall be permitted in this matter.

**IT IS FURTHER ORDERED** that the parties shall jointly file a proposed Scheduling Order, as detailed in this Order, by **February 24, 2023**.

Dated this 11th day of January, 2023.

Honorable John J. Tuchi
United States District Judge